UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>          Plaintiff,<br><br>     v.<br><br>**HITE HEDGE ASSET MANAGEMENT LLC,**<br>          Defendant,<br><br>and<br><br>**HITE HEDGE LP, HITE HEDGE II LP, and HITE HEDGE OFFSHORE LTD.,**<br>          Relief Defendants. | Civil Action No.<br>1:23-cv-10351-LTS |

**PLAINTIFF'S UNOBJECTED-TO MOTION FOR
<u>ENTRY OF CONSENT JUDGMENTS</u>**

Plaintiff U.S. Securities and Exchange Commission ("SEC") hereby moves this Court to enter the Final Judgments submitted herewith.  The SEC, Defendant HITE Hedge Asset Management LLC ("Defendant HITE"), and Relief Defendants HITE Hedge LP, HITE Hedge II LP and HITE Hedge Offshore LP ("Relief Defendants") have reached a settlement of this matter, and Defendant and the Relief Defendants have consented to the entry of the proposed judgments.  The Defendant and Relief Defendants have no objection to the relief sought by this motion.  In support, the SEC states:

<u>Background</u>

1.      On February 17, 2023, the SEC filed its Complaint against Defendant HITE alleging, *inter alia*, that it violated Rule 105 of Regulation M under the Securities Exchange Act of 1934 [17 C.F.R. § 242.105] ("Rule 105").  Rule 105 is designed to prevent potentially

manipulative short selling just before the pricing of follow-on and secondary offerings, thereby allowing independent market forces to determine the price of those offerings.  Rule 105 prohibits any person who makes a short sale of securities, during a defined restricted period before the pricing of an offering, from purchasing the same securities in that offering.

2. In the Complaint, the Commission alleged Defendant HITE sold short 17,428 shares of the common stock of Pioneer Natural Resources ("Pioneer") within Rule 105's restricted period in the accounts of the Relief Defendants.  Complaint, ¶¶3, 16-17.  The Commission further alleged that Defendant later submitted on indication of interest for, and received an allocation of, 20,000 shares of the same Pioneer stock for the Relief Defendants in a secondary offering from a participating underwriter, without qualifying for an exception.  *Id.*, ¶¶3, 18-25.  The Commission alleged this trading violated Rule 105 and resulted in improper gains to the Relief Defendants in the amount of $111,629.52.  *Id.*, ¶¶3, 26-28.

3. The SEC, Defendant, and the Relief Defendant Funds have now reached a settlement in this case.  Attached hereto as **Exhibit 1** is the executed Consent of Defendant HITE.  Attached hereto as **Exhibit 2** is the executed Consent of Relief Defendant HITE Hedge LP.  Attached hereto as **Exhibit 3** is the executed Consent of Relief Defendant HITE Hedge II LP.  Attached hereto as **Exhibit 4** is the executed Consent of Relief Defendant HITE Hedge Offshore Ltd.  The Consents set forth the terms of the Defendant's and the Relief Defendants' settlements with the Commission.

4. Attached hereto as **Exhibit 5** is the proposed Final Judgment to which Defendant HITE has agreed.  The Consent of Defendant HITE, **Exhibit 1**, includes consent to entry of its proposed Final Judgment, **Exhibit 5**.

5. The proposed Final Judgment against Defendant HITE includes a civil money penalty of $103,591.  *See* **Exhibit 5**, § I.

6. Attached hereto as **Exhibit 6** is the proposed Final Judgment to which Relief Defendant HITE Hedge LP has agreed.  The Consent of Relief Defendant HITE Hedge LP, **Exhibit 2**, includes consent to entry of its proposed Final Judgment, **Exhibit 6**.

7. The proposed Final Judgment against Relief Defendant HITE Hedge LP includes disgorgement of $18,236.10, with prejudgment interest of $806.53.  *See* **Exhibit 6**, § I.

8. Attached hereto as **Exhibit 7** is the proposed Final Judgment to which Relief Defendant HITE Hedge II LP has agreed.  The Consent of Relief Defendant HITE Hedge II LP, **Exhibit 3**, includes consent to entry of its proposed Final Judgment, **Exhibit 7**.

9. The proposed Final Judgment against Relief Defendant HITE Hedge II LP includes disgorgement of $39,975.99, with prejudgment interest of $1,768.07.  *See* **Exhibit 7**, § I.

10. Attached hereto as **Exhibit 8** is the proposed Final Judgment to which Relief Defendant HITE Hedge Offshore Ltd. has agreed.  The Consent of Relief Defendant HITE Hedge Offshore Ltd., **Exhibit 4**, includes consent to entry of its proposed Final Judgment, **Exhibit 8**.

11. The proposed Final Judgment against Relief Defendant HITE Hedge Offshore Ltd. includes disgorgement of $53,417.43, with prejudgment interest of $2,362.64.  *See* **Exhibit 8**, § I.

**Approval of Settlement Terms**

12. Approval of an SEC consent decree that does not include injunctive relief is appropriate if the decree's terms are "fair and reasonable." *SEC v. Citigroup Global Markets, Inc.,* 752 F.3d 285, 294 (2d Cir. 2014). Factors to be considered include (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind. *Id.* at 294-95 (internal citations omitted).

13. Given the allegations in the Complaint, which the Defendant and the Relief Defendants neither admit nor deny, the monetary relief (disgorgement, prejudgment interest, and civil penalty), described in in paragraphs 4 through 11 above, represents a fair and reasonable resolution of this matter.

The proposed Final Judgments are legal and their terms are clear and enforceable. They represent complete resolution of the Commission's Rule 105 claim against the Defendant as well as its request for disgorgement relief from the Relief Defendants. Further, the parties have acted independently and appropriately in resolving this matter. As reflected in the Defendant's and Relief Defendants' Consents, the Defendant and Relief Defendants offered to settle this matter voluntarily and without any threats, offers, promises or inducements of any kind from the Commission. *See* **Exhibit 1**, ¶6; **Exhibit 2**, ¶5; **Exhibit 3**, ¶5; **Exhibit 4**, ¶5. The Defendant and the Relief Defendants were represented by counsel who had an opportunity to review and approve the form of consents. *See* **Exhibit 1**, p.5; **Exhibit 2**, p.5; **Exhibit 3**, p.5; **Exhibit 4**, p.5.

**Disgorgement of Relief Defendants' Improper Gains – To Be Sent to Treasury**

14. The proposed Final Judgments to be entered against the Relief Defendants,

**Exhibits 6, 7 and 8**, require them to disgorge the net profits derived from Defendant HITE's violation of Rule 105, and orders that the disgorged funds be sent to the Treasury. See **Exhibits 6, 7 and 8**, § I.

15. "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." Section 21(d)(7) of the Exchange Act, 15 U.S.C. § 78u(d)(7);[1] *see also Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) ("a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78(d)(5) [Section 21(d)(5) of the Exchange Act]"). Here, the disgorgement amounts represent the Relief Defendants' net profits.

16. Disgorged funds may be sent to the Treasury consistent with Section 21(d)(7) and *Liu* when doing so is "consistent with equitable principles." *Liu*, 140 S. Ct. at 1949.[2]

17. Here, the order that the disgorged funds be sent to the Treasury is "consistent with equitable principles." While the SEC endeavors to distribute disgorged funds to harmed

---

[1] Section 21(d)(7) was added to the Exchange Act by Section 6501(a) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, enacted January 1, 2021. The relevant provisions of the NDAA apply "to any action or proceeding that is pending on, or commenced on or after, the date of" the NDAA's enactment. NDAA, Section 6501(b).

[2] *Liu* reasoned that the phrase "for the benefit of investors" in Section 21(d)(5) "restricts" the equitable relief that may be awarded under that provision, but left as an "open question" whether "depositing disgorgement funds with the Treasury may be justified where it is infeasible to distribute the collected funds to investors." 140 S. Ct. at 1948. Congress's omission of the "for the benefit of investors" restriction in Section 21(d)(7), combined with its description of disgorgement as a remedy aimed at preventing "unjust enrichment" in Section 21(d)(3)(A)(ii), evinces a congressional intent that courts be able to send disgorged funds to the Treasury where disgorgement is an appropriate equitable remedy for violations of the federal securities laws. *See SEC v. Keener*, 20-cv-21254, 2022 WL 17484383, *9 (S.D. Fla. Dec. 7, 2022) (recognizing that enactment of 21(d)(7) evinced Congressional intent to allow transfer of disgorgement to Treasury).

investors when that is feasible and practical, distribution of the disgorged funds to harmed investors is not feasible or practical in this case. On May 11, 2021 – the day on which HITE received an allocation of Pioneer stock in violation Rule 105 – the total volume of trading in Pioneer stock was over 6.4 million shares or over 320 times the amount the Relief Defendants received in the follow-on offering. Given this trading volume, it is not feasible or practical for the Commission to identify specific harmed Pioneer investors and to quantify their financial harm.

18. Because distribution to harmed investors is not feasible, the only alternative consistent with equitable principles is to send the disgorged funds to the Treasury. Allowing the Relief Defendants to retain the funds would be inequitable. Rule 105 is a market trading rule "particularly concerned with short selling that can artificially depress market prices which can lead to lower than anticipated offering prices . . . . The rule is intended to foster secondary and follow-on offering prices that are determined by independent market dynamics and not by potentially manipulative activity." Short Selling in Connection with a Public Offering, Rel. No. 34-56206, 72 Fed. Reg. 45094 (Aug. 10, 2007) (adopting current version of Rule 105) (effective Oct. 9, 2007). Trading in violation of the rule is illegal. 17 C.F.R. § 242.105(a). Preservation of investor confidence in our capital markets requires that the Relief Defendants be deprived of the improper gains generated by the Defendant's violation of Rule 105. *See, e.g.*, *SEC v. Cavanaugh*, 155 F.3d 129, 136 (2d Cir. 1998) (noting disgorgement may be ordered against person who is not accused of wrong doing where the person (i) received ill-gotten funds, and (ii) does not have a legitimate claim to those funds).

19. Further, equity recognizes that if, as in this case, distribution to a victim is not feasible, disgorged funds may be awarded to the *cy pres* (i.e., nearest possible) alternative.

*Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (applying *Liu v. SEC*). And, in the securities laws, "Congress made payment to the Treasury the *cy pres* alternative … to payment to victims of fraud when payment to the victims is infeasible." *SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015); *see also Kansas*, 574 U.S. at 456 ("[W]hen federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.").

WHEREFORE, the SEC respectfully requests that this Court grant this Motion and enter the proposed Final Judgments attached hereto.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

/s/Richard M. Harper II
Anne F. Hancock (Mass. Bar No. 691884)
Dawn Edick (DC Bar No. 641659)
Amy Gwiazda (Mass. Bar No. 663494)
Richard M. Harper II (Mass. Bar No. 634782)
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Phone: (617) 573-4560 (Hancock direct)
(617) 573 8940 (Edick direct)
(617) 573-8839 (Gwiazda direct)
(617) 573-8979 (Harper direct)
Fax: (617) 573-4590 (fax)
Hancockan@sec.gov (Hancock email)
EdickD@sec.gov (Edick email)
GwiazdaA@sec.gov (Gwiazda email)
HarperR@sec.gov (Harper email)

## CERTIFICATE OF SERVICE

      I hereby certify that on February 17, 2023, a true and correct copy of this document was filed through the Court's CM/ECF system and, accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. I have also caused a copy to be sent by electronic mail to counsel for the Defendant and Relief Defendants, Neil Smith, Esq. at Neil.Smith@klgates.com.

                                      */s/Richard M. Harper II*

                                      Richard M. Harper II

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

      Pursuant to Local Rule 7.1(a)(2), the undersigned states counsel for the parties conferred in good faith prior to the filing of this motion.

                                      */s/Richard M. Harper II*
                                    Richard M. Harper II

Dated:  February 17, 2023